By the Court. Emmett, J.
If the plaintiff has any claim in this action, it must arise on the paper of the 26th July, 1847, the last in point of date, and which was signed by both parties.
He could have no specific demand for the $1,750 mentioned in the paper of the 10th October, 1846, because the defendant’s engagement in regard to that sum was that he should give for it either his note endorsed by Strang or an assignment of the Dikeman mortgage. The assignment of that mortgage was given to the plaintiff, which was a performance of defendant’s agreement, and acquitted him of any personal obligation in respect to the $1,750.
In addition to the $1,750 and the interest due on it, the plaintiff subsequently advanced as much more as. made up $4,000; and for this subsequent advance he received an assignment of Strang’s lien, which made him the sole legal owner of the Dikeman bond and mortgage. The $4,000 was the consideration for the entire sale of that bond and mortgage to him, and unless he stipulated for some additional security, or reserved some ulterior right against Mrs. Corbett or the defendant, he was to look to that bond and mortgage alone for reimbursement ; and the defendant’s answer in that respect is strictly true.
But it is contended that by the paper of the 26th July, 1847, the defendant acknowledged that he had received $4,000 from the plaintiff, and that as this paper does not on its face disclose any agency for Mrs. Corbett, such acknowledgment raised an implied personal promise on defendant’s part to pay the $4,000.
The answer to that is, that the paper of the 26th July, 1847, was a part of the same transaction that gave rise to the receipt of the 9th July, 1846, and the paper of the 10th October, 1846, in both of ‘which the defendant explicitly stated his agency. It is not pretended that the $4,000 was not made up in part of *398 the $1,750 mentioned in those two antecedent papers, or that the mortgage mentioned in the paper of the 26th July, 1847, was a different mortgage from that described or referred to in those previous papers, in both of which it was expressly stated that the bond and mortgage were in defendant’s hands for collection, and the earliest of which was signed by the defendant as solicitor for Mrs. Corbett, thus disclosing the party for whom he was acting. Both those papers were made evidence by the plaintiff himself, and rendered it unnecessary for the defendant to offer any other or further proof of his agency. They sufficiently established the allegation to that effect in his answer; and the assignment of. the mortgage executed by Mrs. Corbett, which was also put in evidence by the plaintiff, proved her ■ownership of the mortgage, her knowledge of the transaction, and her assent to it. We have no right, therefore, to regard the paper of the 26th July, 1847, otherwise than in connexion with those previous documents, in considering this question of defendant’s personal liability under it. They are all parts of a continued negotiation in relation to the same subject matter, in the very inception of which the defendant gave the most ample notice of his agency, disclosed the name of his principal, and subsequently procured her ratification of his acts in her behalf.
But even if the agency of the defendant were not sufficiently established, hów would the parties stand under the paper of the 26th July, 1847 ?
On fhe one hand, the plaintiff acknowledged by it that the defendant had caused the Dikeman bond and mortgage for $4,000 to be assigned to him. On the other, the defendant acknowledged that he had received from the plaintiff on account thereof $4,000, bearing interest from that date; and they agreed,—first, that the mortgage should be foreclosed immediately ; second, that out of the proceeds the $4,000 should be refunded to the plaintiff, with interest at seven per cent, until paid; third, that the residue due on the m'ortgage should be paid to the defendant.
It appears then by that paper, that on the day it bears date, the plaintiff’s whole advances amounted to $4,000, and no more. But there was then due on the Dikeman bond and mortgage *399 not only $4,000 principal, but interest from the 20th of November, 1846. The foreclosure proceedings show this.
The amount due on the bond and mortgage, therefore, exceeded the sum of plaintiff’s advances by the amount of this cash interest. The paper itself shows that no deficiency on the contemplated foreclosure was anticipated by either party, but on the . contrary, that it was assumed that the foreclosure would yield the full amount of principal and interest due on the mortgage, in which evept, after refunding to the plaintiff his $4,000 with interest, there would be a residue or surplus; and it is manifest that the object of this paper was to provide a check upon the plaintiff’s having a greater interest in the bond and mortgage under the assignment which he held, than would be an equivalent for the sum paid by him with interest. Without that paper the assignment would have operated as an absolute sale to the plaintiff of all that was due on the bond and mortgage, for interest as well as principal; and it was not intended that he should have as profit or usury on the transaction, the excess of what was due on the bond and mortgage beyond what he had paid with interest. That paper was drawn therefore, not for the benefit of the plaintiff, but of some interest represented by " the defendant; whether Mrs. Corbett’s or his own, is immaterial so far as the plaintiff is concerned. It was an equitable defeasance of the assignment, as to all benefit from it beyond the sum advanced by plaintiff with interest. It provided in distinct terms that the residue due on the mortgage, after refunding the plaintiff’s $4,000 with interest, should be paid to the defendant, which merely meant that it should not be paid or go to the plaintiff; and it contained no undertaking or guarantee on the part" of the defendant either personal or fiduciary, to pay anything to the plaintiff in any event. The plaintiff was to look to the proceeds of the mortgage, not merely as the primary source but as the only source from which he was to receive his $4,000 with interest, and that he was to do by an immediate foreclosure—not for the sake of his own interest merely, but for the more certain realization of the residue which did not belong •to him. That paper in fact made him a trustee as the holder of the mortgage, for the defendant, in respect to such residue ; and if by his delay in not foreclosing immediately but deferring *400 it for three years, while the interest was accumulating on his own $4,000, and on the mortgage debt, it could be shown that the property had so depreciated in value as to have caused the mortgage on foreclosure to yield less than sufficient to pay the full amount of principal and interest due on it, so far from having any demand for a deficiency of his own proper claim under it, he would be more likely to have made himself liable to the defendant for having thus occasioned the loss of the surplus or residue, which by the terms of that paper was to be paid to him.
Even if the defendant had been the acknowledged debtor to the plaintiff, and it was admitted that the assignment of the bond and mortgage had been merely as collateral security for such debt, the immediate foreclosure of the mortgage was made an essential part of the consideration for giving such security; and the plaintiff’s unexplained neglect to comply with that condition was a failure of consideration on his part, which the defendant might have set up against any attempt to make him liable for the deficiency. That the engagement to foreclose rested on the plaintiff, admits of no question. It could have rested on no other party. He was the holder and owner in law of the bond and mortgage, and as such, did actually foreclose in 1850 ; and it does not appear, nor is it pretended, that the defendant was to have, or that he had in fact, any control over, or agency in the foreclosure proceedings. The delay, therefore, in taking those proceedings, lies at the plaintiff’s door. Hor would he have stood on sure ground, even if he had foreclosed immediately; because he took the bond and mortgage under an agreement- to look, directly and in the first instance, to the proceeds for his money, thus, by his own act and consent, placing the defendant in the position of a mere surety to be called upon only in the event of a failure of the primary source or fund. The bond and mortgage together constituted that source. They were inseparable, and had both been assigned to him as one asset or item of property; and he was bound therefore to have exhausted his remedy on the bond as well as the mortgage before he could have recourse to the defendant. It does not appear that he has done so ; and the presumption is, that he still holds the bond, which may be perfectly good against the estate of the *401 obligor. He has not even tendered back the bond to the defendant as a preliminary to his demand against him; and he surely could not recover in this suit and retain the bond also.
If we view this case, therefore, in the most favorable light for the plaintiff, his claim is beset with difficulties. In its true aspect, as .already shown, it is clear that he has none that can be enforced; and the defendant is, therefore, entitled to judgment.